IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34396-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAYDEN MACKENZIE WALSH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Hayden Walsh appeals his convictions for assault in the second

degree and unlawful imprisonment. He assigns error to hearsay testimony and the failure

to instruct the jury to deliberate only with all twelve jurors present. We conclude the trial

court committed no error, other than the admission of one hearsay statement. We

conclude the one error to be harmless and affirm Walsh's convictions.

## FACTS

An opinion's statement of facts in a criminal appeal generally tells the story of the

crime from the direct voice of the victim and eyewitnesses. In this appeal, the victim

refused to testify against the defendant and no percipient witnesses observed the assault,

so we outline the facts based on comments uttered, proximate in time to the crime

charged, by the victim to bystanders and law enforcement officers.

On the evening of January 19, 2016, West View Garden Apartments manager

Christopher Schuler drove his loud truck into the parking lot of the apartment complex, in

which victim Angela Saenz and defendant Hayden Walsh resided. Schuler noticed Saenz, with her baby, exit her apartment. Saenz gestured toward him and walked quickly to the truck to speak. Saenz told Schuler that Walsh trapped her, took her keys, held a screwdriver to her throat, and told her he would bash in her head. A scared Saenz asked Schuler for assistance.

As Christopher Schuler and Angela Saenz conversed, Hayden Walsh ran to Schuler's truck. Walsh loudly and belligerently demanded to hear everything uttered by Saenz. Schuler, who remained in his truck, told Walsh to be quiet and leave. Walsh stepped in front of Saenz and, with choice words, ordered Saenz to return inside their apartment. Saenz obeyed. A frightened Saenz looked over her shoulder as she paced to the apartment, as if to request Schuler to call the police. A worried Schuler called 911 and spoke to dispatch before Saenz entered her apartment.

The West Richland Police Department dispatched Officers Jared Kelly, Steven Heid, and Duane Olson to investigate a "domestic disturbance" report at West View Garden Apartments. The officers arrived three minutes after Christopher Schuler's call. When the officers arrived, they spoke with Christopher Schuler. Schuler told them about the encounter with Angela Saenz and Hayden Walsh.

As Christopher Schuler spoke, Hayden Walsh exited the apartment and approached the officers. The officers explained to Walsh the purpose for their presence.

2

Walsh stood unbalanced with his feet pigeon-toed and while flexing his pectoral muscles to counterbalance himself.

The West Richland police officers detained and read Hayden Walsh the *Miranda* warnings. Walsh initially invoked his right to silence, but later spoke to Officer Steven Heid. Walsh inconsistently and incoherently answered Officer Heid's questions. Walsh denied any physical confrontation with girlfriend Angela Saenz, but agreed he and Saenz had argued. Walsh told Heid that he prevented Saenz from leaving their shared apartment by leaning up against the door. Walsh claimed that Saenz held a screwdriver to his throat.

After speaking with Hayden Walsh, Officer Steven Heid interviewed Angela Saenz inside the apartment. Saenz was shaken, but not distraught. Saenz uttered coherent responses to Officer Heid's questions. Saenz told Heid that earlier in the day she prepared to move from the apartment when she and Hayden Walsh argued. The argument converted into a painful wrestling match. Walsh held a screwdriver to her throat, and said, "fifty-eight times, [twenty-eight] times, or one in the back?" Report of Proceedings (RP) at 54, 55. Saenz told Heid that, when she heard the apartment manager's loud truck outside, she ran from the apartment to request help. Walsh trapped her in the apartment for fifteen to twenty minutes and the whole incident lasted forty-five minutes.

3

Officer Jared Kelly spoke casually further with Hayden Walsh while Steven Heid interviewed Angela Saenz. Walsh said he and Saenz wrestled when she suddenly hit him in the face and karate chopped his throat. Walsh reacted by inserting his finger into Saenz's throat and boasting: "I can choke you with one finger." RP at 129.

Angela Saenz later signed a written statement for the West Richland Police Department, which statement confirmed her comments to the officers on January 19. Apartment manager Christopher Schuler also signed a written statement.

## PROCEDURE

The State of Washington charged Hayden Walsh with assault in the second degree and unlawful imprisonment. The State asserted both offenses constituted acts of domestic violence.

The first witness at trial, Angela Saenz, testified she lied to police when she reported on, January 19, 2016, that Hayden Walsh assaulted and detained her. Therefore, the jury heard no direct testimony of any domestic violence inside the apartment. Saenz claimed she prevaricated in a misguided attempt to coerce a mental health evaluation for Walsh, which evaluation he needed in light of his odd behavior in the preceding months. When Walsh refused an evaluation and his family refused to help him, Saenz schemed to accuse him of a crime on the assumption the accusation would lead to a psychological evaluation through the criminal justice system. Saenz additionally testified she lied in her written statement to police and during a pretrial interview with defense counsel and the

4

prosecutor. Saenz denied that she assaulted Walsh, that Walsh poked her in the throat, and that Walsh stated he could choke her. At the request of the prosecutor, Saenz read part of her January 19 written statement to the jury.

Apartment manager Christopher Schuler testified second. Without a defense objection, Schuler testified that Angela Saenz told him that Hayden Walsh would not let her leave the apartment, took her keys, and held a screwdriver to her throat. When asked if he remembered any other comments from Saenz, Schuler initially answered in the negative. Without objection and when prompted by the prosecutor to review the written statement he prepared for police on the night of the incident, Schuler testified that he recalled Saenz also saying, "He's going to bash my head in." RP at 97.

Hayden Walsh's counsel, contrary to the lack of objections to Christopher Schuler's repeat of Angela Saenz's comments, objected whenever the prosecution asked Officer Steven Heid to relay Angela Saenz's remarks during Heid's interview of Saenz. Walsh argued that the questions called for a hearsay response, and the court sustained most objections. The court overruled one hearsay objection. The State's counsel asked Heid: "Did [Saenz] indicate that an assault had taken place?" Over Walsh's objection, Heid replied: "Yes." RP at 108-09.

When the State's attorney asked Sergeant Duane Olsen what Christopher Schuler told him at the apartment complex, the court sustained defense counsel's hearsay

5

objection. And when the prosecutor asked Olsen to testify about what Angela Saenz told him, the court sustained defense counsel's hearsay objection once again.

At the conclusion of the testimony, neither side registered objections to the jury instructions or requested additional instructions. The court based all jury instructions on the Washington pattern jury instructions. No alternate juror deliberated with the jury. Deliberations lasted three and one half hours.

The jury found Hayden Walsh guilty of assault in the second degree and unlawful imprisonment. The jury also found the crimes to involve domestic violence.

## LAW AND ANALYSIS

### Ineffective Assistance of Counsel

At trial, Angela Saenz testified inconsistently with her contemporary account of Hayden Walsh's conduct on January 19, 2016. As a result, the State attempted to introduce statements uttered by Saenz to apartment manager Christopher Schuler and West Richland police officers. These attempts create issues on appeal. The trial court sustained all but one objection to the police officers' repeating, for the jury, Saenz's report on January 19. Schuler related, without objection, the comments Saenz told him. The lack of an objection by trial counsel generates Walsh's first assignment of error.

Hayden Walsh argues ineffective assistance of counsel because his trial counsel failed to object to hearsay testimony from Christopher Schuler. The State responds that the excited utterance exception to the hearsay rule legitimized the testimony. Therefore,

6

the trial court would have overruled any objection from Walsh's counsel and counsel committed no error. We agree with the State.

The Sixth Amendment to the United States Constitution guarantees defendants the right to legal counsel in criminal trials. WASH. CONST. art. I, § 22. Like the federal constitution, Washington's Constitution also grants an accused, in a criminal prosecution, the right to appear by counsel. CONST. art. I, § 22. The right to counsel under the state and federal constitutions are coextensive. *State v. Long*, 104 Wn.2d 285, 288, 705 P.2d 245 (1985).

To meaningfully protect an accused's right to counsel an accused is entitled to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Courts apply a two pronged test to determine if counsel provided effective assistance: (1) whether counsel performed deficiently, and (2) whether the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. at 687. If a defendant fails to establish one prong of the test, this court need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). This is a mixed question of law and fact, reviewed de novo. *Strickland v. Washington*, 466 U.S. at 698.

To satisfy the first prong, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The burden is on the

7

defendant to show deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This court gives great deference to trial counsel's performance and begins the analysis with a strong presumption counsel performed effectively. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015).

Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Johnston*, 143 Wn. App. 1, 16, 177 P.3d 1127 (2007). The decision of when or whether to object is a classic example of trial tactics. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal. *State v. Madison*, 53 Wn. App. at 763.

Hayden Walsh does not establish ineffective assistance of counsel because the contested statements repeated in trial testimony fell under a hearsay exception. Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. ER 801(c). The prohibition against hearsay, however, is subject to many exceptions allowing a court to admit a hearsay statement. ER 803.

The exception at issue on appeal extends to excited utterances:

> A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

ER 803(a)(2). The exception presumes that, under certain external circumstances of physical shock, a stress of nervous excitement stills the reflective faculties and removes

8

their control. *State v. Chapin*, 118 Wn.2d 681, 686, 826 P.2d 194 (1992); 6 JOHN HENRY

WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1747, at 195 (Chadbourn rev. 1976).

The excited utterance exception assumes that a reaction to the stress of a startling event

offers little or no opportunity for a statement that is a misrepresentation or conscious

fabrication. *State v. Palomo*, 113 Wn.2d 789, 796, 783 P.2d 575 (1989).

A statement qualifies as an excited utterance if (1) a startling event occurred, (2)

the declarant made the statement while under the stress or excitement of the event, and

(3) the statement relates to the event. *State v. Magers*, 164 Wn.2d 174, 187–88, 189 P.3d

126 (2008); *State v. Woods*, 143 Wn.2d 561, 597, 23 P.3d 1046 (2001). Statements may

be admitted under this exception even if the declarant recants or testifies at trial that the

event never occurred. *State v. Ohlson*, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007). In

determining whether an utterance is spontaneous, courts look to the time that passed

between the event and the utterance, and any other factors that indicate if the witness had

the wherewithal to fabricate a story, such as her physical and emotional state. *State v.*

*Briscoeray*, 95 Wn. App. 167, 173, 974 P.2d 912 (1999).

*State v. Briscoeray* involved a parallel pattern of facts. The victim left her

residence, ran to the guard post of her apartment complex, and stated to the guards that

Leonard Briscoeray placed a gun to her head. The guard summoned police and reported

the altercation. The police interviewed the victim, who reported that Briscoeray tried to

kill her and described the incident in detail. At trial, however, the victim recanted and

9

testified that she and Briscoeray argued, that he did not put a gun to her head, and that she fabricated the story to prevent him from leaving. The court admitted the victim's statements to the apartment guard under the excited utterance exception despite her recantation. The short amount of time that passed between the incident and her recitation did not allow for rehearsal, and the victim was agitated and upset when she reported the incident.

Angela Saenz quickly ambled from her house to meet Christopher Schuler. She told him Hayden Walsh held her captive, took her keys, placed a screwdriver to her throat, and threatened to collapse her head's bone structure. Schuler described Saenz as "scared." As Walsh returned Saenz to the apartment, she glanced over her shoulder at Schuler to confirm he would call the police. The short time frame involved, Saenz's behavior when approaching and speaking with Schuler, and the extreme threats that Saenz disclosed establish that she made the statements to Schuler spontaneously and under the stress of assault. Saenz's later recantation does not invalidate use of the evidence. Saenz's statements to Schuler were admissible under the excited utterance hearsay exception.

In order to prove deficient performance of counsel by not objecting, Hayden Walsh must prove that the court would have sustained the objection. *State v. Hendrickson*, 129 Wn.2d at 79-80 (1996). The trial court would have admitted the testimony of Christopher Schuler over any objection from Hayden Walsh. Therefore,

10

Walsh did not suffer ineffective assistance of counsel. We need not address whether Walsh suffered prejudice.

Testimony from Officer Steven Heid

Hayden Walsh argues, and the State concedes, that the court admitted improper hearsay through Officer Steven Heid. The State, however, argues that the error was harmless in light of the weight of the untainted evidence. The hearsay at issue is the testimony of Officer Heid regarding Angela Saenz' statement to police:

Q. Did [Saenz] indicate that an assault had taken place?
A. Yes.

RP at 108-09. Defense counsel objected to the testimony on hearsay grounds and the court overruled the objection.

In *State v. Briscoeray*, 95 Wn. App. 167, previously discussed, the court, under the excited utterance exception, permitted police officers to testify to statements rendered by the victim. In *State v. Magers*, 164 Wn.2d at 188 (2008), the Supreme Court also approved the admissibility of a statement rendered by the victim to the police when the police arrived to investigate the crime. Despite this precedence, the State may concede the unsuitability of the excited utterance exception as to Officer Steven Heid's testimony, because the officer testified that Angela Saenz was no longer distraught when he interviewed her.

11

Regardless of the admissibility or inadmissibility of Steven Heid's testimony, we hold the evidence to be harmless. The admission of hearsay evidence may raise confrontation clause concerns. *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). A constitutional error is harmless if the appellate court is assured beyond a reasonable doubt that the jury verdict is unattributable to the error. *State v. Anderson*, 171 Wn.2d 764, 770, 254 P.3d 815 (2011). This court employs the "overwhelming untainted evidence" test and looks to the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *State v. Anderson*, 171 Wn.2d at 770.

Officer Steven Heid's testimony repeated an accusation of Angela Saenz that Hayden Walsh assaulted her. Saenz also testified at trial to reporting an assault. The accusation disclosed by Heid thus merely repeated other testimony and afforded no details of any wrongdoing by Walsh. Christopher Schuler's permissible testimony caused the damage to Walsh. Schuler related Saenz's specific comments about Walsh holding a screwdriver to Saenz's throat, threating to reshuffle her skull, and briefly holding her hostage.

## Jury Instruction

Hayden Walsh next contends that, by failing to instruct that deliberations must involve all twelve jurors collectively at all times, the trial court violated Walsh's right to a fair trial and unanimous verdicts. Walsh relies on the 2014 case, *State v. Lamar*, 180

12

Wn.2d 576, 585, 327 P.3d 46 (2014), wherein the Washington State Supreme Court held that jury deliberations must be conducted unanimously in order to preserve a defendant's constitutional rights. Walsh asserts that a trial court must render a jury instruction requiring jurors to deliberate only when all twelve jurors are present and only as a collective. We reject Walsh's expansive reading of *Lamar*.

In *State v. Lamar*, the jury deliberated for a day before a juror grew ill and vacated deliberations. The trial court substituted an alternate juror. Instead of instructing the jury to begin deliberations anew, the court instructed the remaining jurors to promptly inform the new juror of past deliberations. Neither trial counsel objected. On appeal, Lonnie Lamar claimed the instruction constituted manifest constitutional error that could be addressed for the first time on appeal. The Supreme Court agreed and affirmed the reversal of Lamar's conviction by the Court of Appeals.

In our appeal, no alternate juror deliberated with the jury. Hayden Walsh speculates that one juror may have exercised a bathroom break during deliberations of the other eleven jurors. Nevertheless, Walsh presents no evidence that the jurors failed at all times to deliberate as a whole. Walsh suggested no jury instruction at the time of trial that would inform the juror to deliberate only with all jurors present. Walsh cites no decision that demands the giving of this instruction under the circumstances on appeal. Walsh's contention might invalidate all verdicts because inevitably one juror's mind

13

wanders while other jurors deliberate such that a defendant could argue that all twelve jurors did not always deliberate simultaneously.

## Cumulative Error

Hayden Walsh argues that, even if all of his three assigned errors constitute harmless error, the errors when combined created an overall prejudicial effect against him that warrants a new trial. We disagree. We hold that Walsh suffered only one error and previously held the error to be harmless.

## CONCLUSION

We affirm Hayden Walsh's convictions for assault and unlawful imprisonment. Because of Walsh's indigency, we deny the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

14